The next case, No. 22-1394, Claire E. Mundell v. Acadia Hospital Corp. At this time, would counsel for the Acadia Hospital Corp. please introduce herself on the record? Thank you. May I please report? My name is Melissa Huey. I represent the appellant, Acadia Hospital. Chief Judge Maron, I'd like to reserve two minutes for rebuttal. If you may. Thank you. This case presents two issues pertaining to the Maine Equal Pay Act. The first issue is whether a Maine employer, if a Maine employer pays employees that perform comparable work at different rates, the question is, does that violate the Maine Equal Pay Act, only if the Maine employer discriminates on the basis of sex, as the statute provides, or, as the district court below found, does the Maine Equal Pay Act essentially impose a bright line requirement that Maine employers pay all employees the same rate unless pursuant to a merit pay seniority or a shift differential. That's the first issue. The second issue is whether an employer found to have violated the Equal Pay Act is liable for tribal damages and attorney's fees. I think it's important just to start by noting that these are issues that have never been decided by the Maine Supreme Judicial Court and, in fact, never been decided, to our knowledge, by even any superior courts in Maine. These are issues that are of critical importance to employers and employees in the state of Maine and that's the reason that we have requested a referral to the Supreme Judicial Court so that the people in Maine can have a real final decision on what this law means. Counsel, you spend a fair amount of time on your briefs, understandably, describing the problems that the district court's decision will pose for employers in Maine. You use some pretty strong language that's, because of those consequences, it's reading is absurd and illogical. But as a textual matter, putting aside all the policy implications, as a textual matter, what is wrong with the way the district court read the first part of the statute? Because what the court seems to be saying is that if you look at the language after the preposition, the way the district court put it, the statute itself offers a definition of what discrimination on the basis of sex means. And that seems to be, as a matter of plain text, a fair reading of the statute. So what is wrong with that as a fair reading of the plain language of the statute? Well, the reason I don't think it's a fair reading is because the statute uses the words discriminate on the basis of sex. And what the court does, essentially, is eliminate those or, as Your Honor has suggested, redefine the word discriminate. Discrimination has a meaning. That's important. And if the court wanted or if the legislature wanted to provide that any time an employer pays employees at different rates, that's a violation of the statute. That's what they would have said. But the legislature used the word discrimination. And I think that's significant. What the district court did was suggest that the legislature reached out and redefined the term discrimination to mean something that it doesn't. I don't think that's plain meaning of language. I think plain meaning of language is that the words discriminate on the basis of sex mean something. The argument you're making has the benefit of avoiding superfluous language, for sure, in that first sentence. It's true, as I understand it, that the federal analog to this has the same language, and it's been understood that first sentence to be superfluous, in just the way you say we shouldn't hear. But you say Maine doesn't necessarily follow that, so even though maybe that's a possible reading, it's not clear that it's the right reading, correct? Yeah, what I'm saying is that that is redundant language. The federal law includes it, which means we wouldn't be here if Maine had done that. And you're saying we shouldn't assume the redundancy if we can avoid the redundancy. Exactly. Okay. If you're right, then that means discrimination on the basis of sex in sentence one is intentional discrimination, correct? It is. Yeah. If you're right, can you explain how the second sentence works? Yes. I think the second sentence works. That's relating to the merit pay. Right, but it includes in it discrimination on the basis of sex. So won't that be a null set sentence, if you're right about the first sentence? I think that what the legislature is doing, I want to make sure there are only two sentences that we're talking about, so I'm talking about the right sentence. But what the legislature is doing there is providing for the guidance of employers a couple of... that a condition is that those types of systems don't themselves discriminate on the basis of sex. Exactly. So that means they can't involve intentional sex discrimination, right? So it's a safe-ish harbor, yes. But it's limited because it doesn't apply if you discriminate on the basis of sex. Right. But why do they need to do that if the first sentence already is saying you can't discriminate on the basis of sex? Because it says differentials that are paid pursuant to these systems are not within this prohibition. So what they're trying to do is say you employers can feel confident if you're going to impose a merit system or a seniority system or differentials based on shift, but you still can't be discriminating on the basis of sex. But you wouldn't need that, do not discriminate on the basis of sex, on your reading. Isn't that redundant language? I don't think it is. It would just otherwise read that do not, are not within this prohibition, and the prohibition already includes the intentional discrimination. The prohibition says you can't discriminate. Then there's an exception that says you can do merit increases, et cetera. And then because we've taken merit increases, et cetera, out of the prohibition, you have to put back in the notion of discrimination. That's my argument. So your argument, I gather, is that it's, in a sense, you would find support for your argument in that second sentence, that it seems odd from your perspective in the second sentence to make proof of discrimination on the basis of sex relevant to the availability of the affirmative defense, and yet, same language, discrimination on the basis of sex, not matter at all in the first sentence. I mean, from your perspective, that at least introduces a note of ambiguity about the relevance of intentional discrimination on the basis of sex. That would be the argument that you would make to get benefit from the way in which the statute is written. Is that right? Yes. And I think that it's important to remember that the Equal Pay Act is about discrimination. There are statutes in other states that have that bright line rule. For example, the Massachusetts statute does. It says you may not pay employees differently, and it doesn't tie it to discrimination. But the Maine statute is very clear that what we're talking about here is discrimination. What we're trying to do is get rid of treating the sexes differently in the workplace. But the problem is it says, if I'm following, it says systems that do not discriminate on the basis of sex are not within this prohibition. Right? Established seniority or merit systems or differences in the state do not. Only systems that do not discriminate against sex are not within the prohibition. So that's a bunch of double negatives that gets us all tied up in knots. But we have to untie them. Yes. And we have to make the two sentences work together. Differentials that are paid pursuant to established seniority systems, et cetera, that do not discriminate on the basis of sex are not within the prohibition. Right. And the prohibition only applies, in your view, to things that do discriminate on the basis of sex. Yes. So I think that, as I said before. So that's how you say they work. I think that it is somewhat redundant. And the reason for the redundancy is that the legislature is trying to make clear. I got it. So that people don't have to worry about these things. But for that reason, to Judge Lopez's point, then that do not discriminate on the basis of sex is an affirmative argument against the district court's reading. Because on the district court's reading, it's hard to give sense to what that phrase is doing. Unless that phrase is doing something odd, which would mean it's now using that do not discriminate on the basis of sex in the conventional intentional idea. Even though it's defining it in the first sentence to be a strict liability regime where intent doesn't matter. Correct. And your view is it's more coherent to just say it. You have to show motive at the front stage with respect to these. These systems are exempt from it so long as they don't have that motive problem. Yes. And I think that that makes more sense when you read the statute. And I apologize if I used overly flowery language about Judge Walker, who I certainly respect to the end of the earth in my brief. But I do just want to stress that particularly from main employers like my client, the ability to be able to recruit people, and that means that you have to have some discretion in what you're paying is absolutely critical. Counsel, even on that point, I was not criticizing your use of language. My point was that invoking all these policy concerns did not seem to me all that helpful in trying to understand exactly what the language means. On that point about the consequences of the language, you suggest that this statute, read as Judge Walker read it, makes it far too easy to establish one of these equal pay claims. And yet, even given the way the statute is written, it talks about comparable work on jobs that have comparable requirements relating to skill, effort, and responsibility. So those showings of comparability have got to be made in order to invoke the protection of the statute. And those are not, I would suggest, not necessarily easy propositions to establish. Isn't that true? I agree with that. And that's not the argument we're making. What we're saying is that if the argument is that everybody has to be paid the same, that to an employer means that it removes all of their discretion. They cannot recruit people. They cannot do imaginative pay schedules or things like that. What do you mean by imaginative pay schedules? Well, so if you may want to, it might not be a shift differential, but you might be able to say people who work from home are paid a little bit less, or people who work from home are paid a little bit more, or things like that, that help have a vibrant workplace, but actually end up in different rate pays that are not at all based on sex. And that's important. And I know that my time is up, but I just want to respond to Judge Lopez, your comment that talking about the policy issues isn't that helpful. And I disagree somewhat because what we're talking about here is guessing what the main legislature meant. And in a statute that, although both sides think is clear, may not be as clear as we think. And when we look at what the main legislature meant, my argument would be that the main legislature understands the importance of being able to recruit and retain top talent in the state of Maine, particularly in rural areas. Thank you. Can I ask one more question just sort of on that line? So Maine also has the Human Rights Act, the Maine Human Rights Act, which I think prohibits an employer from discriminating on the basis of sex because of sex, right? So it reads that discriminatory intent that you're asking us to read into this statute. It has that more specifically. Correct. Given those two statutes, is it your position that those two statutes are redundant of each other? Not completely. And I think the same can be said for the federal Equal Pay Act. We also have Title VII, et cetera. But they're not completely redundant. But if we accept your reading of the statute at issue here, what isn't redundant between this statute and the Maine Human Rights Act? The Maine Equal Pay Act includes a lot of other provisions about trying to get the state into compliance. This provision? Is this provision entirely redundant of the Maine Human Rights Act? No, it's not. Why not? Well, you have to look at the statute as a whole. No, this provision. Yes. No, this provision. Is this prohibition already included in the Maine Human Rights Act? No, it's not. Why not? Because the Maine Human Rights Act is talking about, first off, it only applies to certain employers, employers over 15 people. It also includes different intent requirements, and it includes the ability to collect compensatory damages, different types of damages. So, no, it's not, and it's the same situation that we have with the federal Equal Pay Act, which does include a non-discriminatory, a catch-all for things that are non-discriminatory. Okay. Thank you. So, most states have these kinds of both things, and I think that mostly it's to encourage, it's the second part of the statute that's also in the federal Equal Pay Act that encourages compliance and really sort of makes a legislative statement about the importance of wage equality. Thank you. Thank you, counsel. At this time, would counsel for Mundell, appellee Mundell, please introduce herself and direct her to the camera. May it please the Court, Valerie Wicks here with David Weber on behalf of the appellee, Dr. Claire Mundell. In this case, Dr. Mundell has the statutory text, unanimous case law from an analogous federal law, and legislative history on her side. And I want to go right to Judge Montecalvo's question. So, you asked whether the Maine Human Rights Act already takes care of this problem if appellant's read of the statute is the correct one. And I think you're onto something there, because we already have in Title VII and the Maine Human Rights Act a prohibition on intentional discrimination because of sex, which includes discrimination, intentional discrimination, and compensation. So, we have cases like the McMillan decision from this Court, where a plaintiff brought both a Title VII and a federal Equal Pay Act case. And the Court analyzes those differently. They say when we're looking at the Title VII case, we are going to get into whether the employer intentionally discriminated against you on the basis of sex by paying you less. But when we're looking at the federal Equal Pay Act, we're not going to get into the intention of the employer. And that makes some sense if we think about equal pay cases as distinct from disparate treatment, typical disparate treatment cases. Unequal pay is harder to figure out. If you've been fired or you lost out on a promotion and you have a disparate treatment claim, you know you got fired. Counsel, what? Oh, excuse me. No, go ahead. Just to follow up on the point that Judge Barron made, what is the, I struggle to understand what the function of the language, discrimination between employees on the basis of sex is. I mean, you could easily rewrite this statute and accomplish its protective purpose without any reference to discrimination on the basis of sex. Let me, I've taken the liberty of rewriting the beginning part of the statute. Let me read it to you. If I can read my own handwriting. An employer may not pay wages to any employee in any occupation in this state at a rate less than the rate at which the employer pays any employee of the opposite sex for comparable work. It seems to me that statement, which is essentially the language that we see after the by, I mean, that language accomplishes exactly the same protective purpose that the statute does, including the reference to discrimination on the basis of sex. So it does seem to me that the reading that you're defending makes this reference to discrimination on sex entirely superfluous. It simply has no meaning, no function, no protective purpose at all. So shouldn't that give us pause in reading the statute in the way that you're suggesting we should? No, it shouldn't. I think it's actually a helpful clarifier of what the rest of the statute means. So first of all, it's saying you cannot discriminate between employees in the same establishment on the basis of sex by doing this thing of paying people differently for comparable work unless an exception applies. So it's setting up, there is this type of. You don't need to do that. Well, I think it's clarifying. Clarifying of what? Well, because there's different types of illegal discrimination. But for purposes of the prohibition, it's not like a seminar. It's just the statute just says here's what you've got to do. And why do you need to tell people it's on the basis of sex discrimination if in fact those words aren't going to have anything to do with what the prohibition is? Well, because it's discriminating on the basis of sex. It doesn't say on the basis of hair color, right? But the sex discrimination part of it is encompassed by what occurs after the by. So you don't need what comes before the by to make the point that what's being talked about is gender discrimination. I still think it's helpful when you're framing the rest of the section because if we think about, for example, the Maine Human Rights Act. But you agree it has no operative content. It doesn't do anything. I don't. I think as a clarifying matter, it's helpful. But separately, if we think about Bostock and we think about that decision, breaking down the word discriminate, right, means treat two otherwise similarly situated people differently. That's Justice Gorsuch's description of this is what the word, the literal word discriminate means. So here the Maine legislature is saying. Why? Why are they bothering to say that? Yeah. Because I think they're setting up what comes next. And this is paraphrasing the district court where he says, you know, if there is. Why they bother to do that when they just go on and say what's next. That's the whole idea of not having superfluous language that you don't need to waste words in legislation. Yeah. Oh, I think there's an independent value in saying this counts as discrimination on the basis of sex. And I'm thinking of the definition section, for example, of the Maine Human Rights Act, where they say these things count as discrimination. Right. And one of those things, as we mentioned in our briefing, is failing to provide a reasonable accommodation. Right. So it counts that you can go look at that statute. So then if that's the thinking, what do we make of the reappearance of that phrase in the second sentence? What function is it performing there on your view? So the first thing that popped in my head when you asked that question was it's the fact pattern of corning glass. Right. Where you have a situation where a factory had a night shift and a day shift, and they said, but women aren't allowed, you know, we're going to pay the night shift more than we pay the day shift. And, oh, by the way, women aren't allowed to work at night. So the function here of repeating that don't discriminate on the basis of sex is to say if you're paying different wages, for example, because of a day and a night shift, you can't treat employees differently on the basis of sex in that differentiation between the day and night shift. In the first sentence, I think you're acknowledging, other than emphasizing clarification value, that the reference to discrimination on the basis of sex has no functional importance. It really doesn't add anything to the protective language. And yet in the second sentence, where we're talking about the affirmative defense and the affirmative defenses, it does have operational effect. I mean, it makes clear that those affirmative defenses will not be available if there is proof that there's sort of a sham, that when you really examine it, they reflect discrimination on the basis of sex. So it seems very odd. In the first sentence, for that language to have no significance, in the second sentence, it can have determinative significance. So that's kind of hard to reconcile. Yeah, so I think one thing that's helpful is I agree it could be doing two different things within this section. But what we have here is if we look at the history of this law, and we go all the way back to 1949 and its first iteration, it used a very different setup. And then in 1963, we have U.S. Congress passing the Federal Equal Pay Act. And just two years later, Maine came up with this framework, right? So they modeled the Maine Equal Pay Law on the federal law. And Maine has now amended the Maine Equal Pay Law five more times since 1965. And they've kept it this way, and they've kept it this way while we have this whole body of case law developing under the Federal Equal Pay Act from the U.S. Supreme Court and every single federal circuit court, saying discriminate on the basis of sex, and the Federal Equal Pay Act doesn't mean. But there's one, well, two points. There's one difference. I take it your response on the second sentence just mirrors the response of your opponent on the second sentence, which is whatever it means in the first sentence just means that same thing again in the second sentence. So the idea is if it means differentials based on sex in the first sentence, it means differentials based on sex in the second sentence, or are you saying it means intentional discrimination? I think it means differentials on the basis of sex. Okay. And they say if it means intentional discrimination in the first, it means intentional in the second. It's just there to clarify what that prohibition is as a clarifying way. So it's sort of a tie either way on that score. So what you then say in response to the redundancy argument in the first sentence is the federal legislation already has that redundancy, and there's a ton of case law acknowledging that, and Maine knew it, and there's no indication that Maine meant to deviate from it, save for one possible thing, which is the federal legislation had the catch-all provision, which re-imports the kind of protection that your opponent is saying your reading reads out of the statute. And so what is your answer to the following question? We're trying to decide whether we should send it to the Maine court to decide, and that's supposed to be a judgment about whether if we can do it ourselves because it's clear enough, we shouldn't bother them with it. But if it's not so clear, we should let them figure it out. Right? Yep. Okay. If it's redundant, that counts against the idea it's clear. Then you say here's all these reasons, don't worry about the redundancy, make sense in context, and look at the federal legislation, that already has it. But then they say, but the federal legislation has this difference because it has this catch-all, and that catch-all does a lot of work. So how do we know that Maine, in excluding the catch-all, wasn't relying on the fact that they didn't want to have the redundancy? What's the answer to that? So a couple of things. We know that in 1949, the first federation of the Maine Equal Pay Law, they had a catch-all. Right? They had that broad catch-all. They stripped it out once U.S. Congress passed the Federal Equal Pay Act. We also know, in the very beginning, in 1949, Maine had an equal work standard. They also took that out and replaced it with comparable in 1965. So we have a clear direction that Maine is trying to be more expansive, more protective when it comes to equal pay than the federal law. And we actually found this when preparing for today. In 2019, the most recent amendment to the Maine Equal Pay Law includes certain prohibitions against salary history questions, and that's codified in 26 MRS 628A. And it starts with legislative findings that say equal pay remains a huge problem in this state, and we've got to do more about it. We've had this law in the books forever, yet it remains a huge problem. And I'd be remiss if I didn't note, this case is the very first one to reach a decision in the law's 70-year history. So what the Maine legislature said in 2019 was we need to beef this up even more, and we're going to do so with banning salary history questions. So given that history, that statutory history, it would be very odd if Maine was somehow imposing an intent requirement, given that federal case law. Opposing counsel, we do have these questions, and there are good arguments, I would suggest, on both sides. I know you don't agree with that, but I've heard good arguments on both sides. You both spent a lot of time in your briefs talking about the enormous policy implications for Maine. Opposing counsel talks about the consequences for employers. You talk about the importance of advancements in making sure that there is equal pay for men and women in Maine. So the stakes are very high on both sides. Why doesn't that argue for certification? I mean, we're inevitably, we're guessing. We cannot offer a definitive word, given some of the uncertainties that we've been asking you about, and given the stakes, why isn't that an argument for certification? So certification, as this court has found, it's inappropriate if the outcome would be reasonably clear. And I would point to the city of Auburn, right, and Scammon, which are cases that are directly on point from the Maine law court, saying if we have a federal law that generally tracks, doesn't have to be identical, but generally tracks the Maine law, then we're going to look to the federal case law when we're interpreting our law. We also have, on the question of troubles, the Cooper decision and in re-wage payment litigation that say if we're dealing with a violation of subchapter 2 that involves unpaid wages, troubles, and attorney's fees. So you're correct that we don't have a decision on 628 specifically, but we have ample guidance from the law court about how they would deal with this question. So we can follow that and know what to do. So in that way, certification just isn't necessary. When was the catch-all taken out? Of the Maine law? Yeah. In 1965. So two years after the federal equal pay law was passed. And had there been interpretations of that law at the time about whether it was strict liability in the first sentence? The Maine law? No, the federal law. The federal law. In those two years? Yeah. Not to my knowledge. I know that Corning Glass is the first U.S. Supreme Court case, and that was in 1973. Co-states it. Okay. Thank you. Yeah, and I just, you know, to end where I began with Judge Montecalvo's question, it would be odd, right, to say there's an intent requirement here in this equal pay law when we already have a law in Title VII and the Maine Human Rights Act prohibiting intentional discrimination in pay on the basis of sex. So we wouldn't need the Maine equal pay law or the federal equal pay act if we already had a law that did that very thing. So I think that's important when we're reading the statute in context, right, that it's both a discrimination statute and a wage statute. It's trying to get at a different problem than the problem that Title VII and the Maine Human Rights Act are trying to get at, and partly that's because, as I was saying, equal pay is different. You don't always know when you're being paid differently than your colleague. In this particular case, Dr. Mundell worked for years for Acadia without knowing she was being paid half as much as her male counterparts. So it would make sense that the legislature was going to try something different to try to get rid of unequal pay on the basis of sex, recognizing that these claims are going to be a little different than the typical Title VII disparate treatment case. So in that way, it's as simple as this. I think this is from Courtney Glass. A simple yet elegant way to address the problem. Thank you. Thank you. Thank you, Counsel. At this time, if Attorney Huey would introduce herself back on the record to begin. She has two minutes over the line. Melissa Huey for Acadia Hospital. So I just want to address the discussion about the legislative history of the Act. It is true that the Act, the 1949 Act had a catch-all, but the 1949 Act is very different from the new one. It says, no employee shall basically pay any female less than a male. Then it has some reasons, and it includes the catch-all or any other reasonable differentiation except difference in sex. But it doesn't mention discrimination. Then they go to 1965 and they amend the complaint, and that's when they take that catch-all, essentially, and move it to the front of the Act by mentioning discrimination. So I think that the legislative history actually supports our argument rather than theirs. That's the first thing I want to say. The second thing I want to say is the mention of Bostock. I think that was a little bit too limited. The Bostock case says that if you're going to prevail on a claim for discrimination, you need to show that but for the protected status, there would not have been the adverse action, and that is precisely what we're saying here. Because of that word discrimination, on the basis of sex, there is a requirement that you show that but for sex, the pay would not have been different. Finally, just very quickly on the penalty provision, I think the law court has stated very clearly that the treble damages relates only to claims for lost wages, and there are three statutes that specifically require payment of wages. This is a discrimination statute. That's what we heard from plaintiffs. That's what everybody says. The law court has never held that the penalty provision relates to a discrimination statute, only a statute for payment of wages. Thank you very much. But this is a claim for lost wages. I mean, the damages here would be measured by the lost wages. There was not an agreement to pay this, but a decision in favor of the plaintiffs would be a decision that these wages should have been paid. So you can't avoid the fact that, in essence, this is a claim for wages to which they were entitled. So I think there's a difference between wages being an element of damages, which is in every discrimination claim case, and I don't think that anyone here claims that every discrimination plaintiff who is successful is entitled under the Maine Act to travel damages and attorney's fees. So there's a difference between wages being an element of damages and a wage statute. And I would contend that the three wage statutes that the law court has decided on are wage statutes, which is a different animal than a discrimination statute. It would be your position, I gather, that both the discrimination on the basis of sex question and how the penalty provision should be read, those should both be certified? Absolutely. Thank you. That concludes argument in this case.